UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL EMILIANO LOPEZ, | ) | 1:08-cv-01164-JMD-HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS WITH PREJUDICE |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK TO ENTER |
| DERRELL ADAMS, | ) | JUDGMENT |
| | ) | |
| Respondent. | ) | ORDER DECLINING TO ISSUE |
| | ) | CERTIFICATE OF APPEALABILITY |

Petitioner Michael Emiliano Lopez ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

A jury convicted Petitioner of one count of petty theft with a prior theft offense (Cal. Pen. Code § 666) and one count of second degree commercial burglary (Cal. Pen. Code § 459) on January 10, 2007. (Pet., Attachment A at 2). Petitioner admitted that he had suffered two prior "strikes" (see Cal. Pen. Code. 667(e)) and had served four prior prison terms. (Id.).

The sentencing court exercised its discretion to dismiss one of Petitioner's strikes. (Id.). The court then sentenced Petitioner to the upper-term of three years on the petty theft offense and doubled the sentence to six years based on the remaining strike. (Id. at 3). The sentencing court imposed four one-year enhancements on Petitioner's sentence based on Petitioner's four prior prison terms. (Id.). The sentencing court stayed the imposition of punishment for Petitioner's burglary conviction. (Id.).

1   The California Court of Appeal affirmed Petitioner's conviction and sentence on April 9,
2   2008. (Id.).

3   Petitioner filed a petition for review in the California Supreme Court on May 22, 2008.
4   (Answer at 4).  The California Supreme Court denied the petition on June 25, 2008.  (Lod. Doc. 4).

5   Petitioner filed the instant petition for writ of habeas corpus in the United States District
6   Court, Eastern District of California on August 8, 2008.  (Doc. 1).  Respondent filed an answer to the
7   petition on January 9, 2009. (Doc. 10).

8   Petitioner consented to have a United States Magistrate Judge conduct all proceedings in this
9   case pursuant to 28 U.S.C. § 636(c)(1) on August 18, 2008. (Doc. 5).  Respondent consented to
10  Magistrate Jurisdiction on November 10, 2008.  (Doc. 10).

## Factual Background[1]

The California Court of Appeals summarized the facts presented by the prosecution and defense as follows:

**Prosecution**

On April 12, 2006 at 1:00 p.m., Matthew Guardia and Pete Sanchez were working as loss prevention investigators at Home Depot on Kings Canyon in Fresno. Guardia saw appellant enter the contractor's entrance of the store pushing an empty cart. Appellant went immediately to the electrical department. Sanchez testified that appellant entered the store through the lumber entrance of the store, a loading zone used by contractors. Appellant caught Sanchez's eye because he was "moving really rapidly," on his way to the electrical aisle.

Both Guardia and Sanchez followed appellant constantly watching him while he was on the electrical aisle. Guardia explained that appellant grabbed two handfuls of 15 amp connectors. Appellant placed what turned out to be nine connectors into a Home Depot bag he carried in his pants. Sanchez saw appellant select nine 15 amp connectors and place them into a Home Depot bag he pulled out of his pocket.

Guardia explained that appellant selected a power strip. Appellant left the electrical department and walked with his cart to the returns counter. Appellant presented the nine connectors to the cashier as a return. The cashier processed the return and issued appellant a store credit. Sanchez also saw appellant proceed to a returns register and tell the cashier he wanted to return the connectors. Sanchez saw appellant get a surge protector from the same aisle. The connectors were priced at $ 8.96 each. Sanchez kept 100 percent surveillance on appellant. The cashier completed the transaction.

Sanchez testified that appellant received a gift card and told the cashier he wanted to

---

[1] The Court adopts the California Court of Appeal's summation of the facts surrounding the crime and the relevant proceedings before the trial court.

pay for the surge protector. The total refund was $ 80.64 and with taxes included, the total store credit was $ 87.07. Appellant exited the store.

Guardia explained that appellant signed a return slip receipt showing he received a store credit. Appellant did not have a receipt for the connectors. After making the return and buying the surge protector, Guardia saw appellant exit the store. Guardia did not know appellant. Guardia and Sanchez identified themselves to appellant as Home Depot security. Sanchez also testified that he and Guardia exited the store, approached appellant, and identified themselves as store security.

Guardia told appellant he had seen appellant enter the store with nothing in his possession and return items he had taken off the shelf. When Guardia asked appellant why he did this, appellant replied he needed the money. Appellant agreed to accompany Guardia back to his office. For safety, Guardia placed appellant in handcuffs. Sanchez also heard appellant say he took the items because he needed the money. Before this incident, Sanchez had never seen appellant and did not know appellant.

On cross-examination, Sanchez acknowledged appellant may have told them something like he did not "need the M-F money." Appellant was ranting, raving, and cussing.

Crystal Sherman was working as a returns cashier at Home Depot. Sherman said that most people with returns usually entered the store through the front entrance. Sherman processed appellant's return of the nine connectors. After appellant received his "refund" from his return of the connectors, he used part of his store credit from the gift card he was given to purchase a power strip. Sherman explained that a customer coming from within the store to make a return is a "red flag." Fresno Police Officer Ramiro Cruz spoke with Sanchez and Guardia and arrested appellant.

**Defense**

Gerardo Contreras, the assistant manager of the Home Depot on Kings Canyon, performed a search pursuant to a subpoena and confirmed there were no video recordings of appellant in the store on April 12, 2006.

Santo Gonzales is married to appellant's sister. Appellant was assisting Gonzales with construction work in April 2006. According to Gonzales, appellant purchased electrical connectors for him but appellant bought the "wrong ones." Gonzales needed the connectors exchanged. Gonzales left the wrong connectors with appellant's mother. Gonzales could not remember how many connectors there were, but he did not have a receipt for them. Gonzales asked appellant to exchange the connectors for right ones.

Yvonne Reynolds, appellant's mother, testified that early in the morning on the day appellant was arrested, Gonzales had given her a bag for appellant, who was asleep. The bag contained yellow electrical plugs. When appellant left later that morning on his bicycle, he was carrying the plastic bag with the yellow plugs. On April 12, 2006, David Noble, one of appellant's neighbors, spoke to appellant, who told Noble he had something to return that day. Noble saw appellant retrieve a plastic bag from inside his mother's home, get on his bicycle and leave.

Appellant testified that a few days before he was arrested, he tried to return the connectors and obtain replacement connectors that could handle the amount of cable needed to run electricity into his sister's house. At that time, appellant brought in the

cable with the connectors. A Home Depot employee advised appellant the connectors were too small for the size of cable. The employee could not locate connectors that were large enough. Appellant did not return the connectors that day.

Appellant visited a Home Depot on Blackstone to exchange the connectors, but that store did not have the connectors or plugs that appellant needed. Eventually, appellant returned the connectors to the Home Depot on Shaw. After this return, appellant received a store credit card, which he used to purchase some ducts. Appellant gave the remaining store credit card to his brother-in-law's brother, Martin.

On April 12, 2006, appellant rode his bicycle to Home Depot to purchase some wall outlets and a curtain rod. Appellant explained he needed the outlets with four plugs and a reset button. Gonzales gave him directions as to what type to buy. Gonzales also asked appellant to return some connectors. Early that morning, Gonzales brought a bag to appellant's mother's home with the items to be returned to Home Depot. Appellant saw Noble later that morning and talked to him for 15 or 20 minutes. Appellant rode his bicycle to Home Depot with the bag his brother-in-law brought.

Upon arriving at Home Depot, appellant first looked for a curtain rod for his mother, but could not find the right size. Appellant walked over to the electrical aisle to look for wall outlets. Appellant walked over two aisles and grabbed a surge protector. Appellant proceeded to the returns counter. After making the return, appellant purchased the surge protector. As he was leaving the store, two men approached him and accused him of stealing. According to appellant, Sanchez told appellant that he knew what he did was wrong. Appellant asked Sanchez what he was talking about. Sanchez told appellant they had him "on camera stealing."

Appellant protested the allegation. The men informed him that if he came back to their office, they would show him the videotape of the incident. Appellant consented to being handcuffed and going to the security office. Appellant explained that he went with the security guards because he knew he did not steal anything and wanted to watch the videotape of the incident to prove his innocence. Appellant was taken to the loss prevention room in the back of the store. Appellant denied telling the security guards that he took property because he needed the money.

Appellant explained that Sanchez wrote a report with help from Guardia and Officer Cruz. Cruz told Sanchez appellant could not be prosecuted the way Sanchez was writing the report. Cruz told Sanchez there was "nothing here to prosecute appellant with." Guardia got on the computer and rewrote the report. There were a couple of places where Cruz told Sanchez to change his report. Cruz told Sanchez to change a comment that appellant was "messing" with some items as well as to state that appellant said he needed the money.

Appellant told the officer and security guards that he did not need any "fucking money." Appellant testified that he never told Sanchez or anyone else that he took items from Home Depot because he needed the money. Appellant denied making any admission. Appellant admitted he was convicted of robbery in 1988 and in 1992.

(Lod. Doc. 3).

During Petitioner's trial, Petitioner sought to impeach prosecution witness Sanchez with a misdemeanor arrest. The Court of Appeal summarized the trial court's treatment of the impeachment issue:

Defense counsel sought to impeach Sanchez with an arrest for misdemeanor petty theft in 2002. According to the prosecutor, Sanchez was not convicted of the offense, but was diverted. According to defense counsel, there was a statement in the police report in which Sanchez admitted the allegation. Defense counsel argued that being able to impeach Sanchez with his admission to the petty theft was crucial to challenging the credibility of Sanchez's testimony. Defense counsel further argued Sanchez was "the only witness that saw anything in this case" that would be used by the prosecution to "contradict my three witnesses."

The trial court found that Evidence Code section 352 empowered it to prevent denigrating and nitpicking over collateral issues. The court was concerned that the admission of this evidence could cause an undue consumption of time, confusion, or prejudice that would outweigh its probative value. The court noted the allegation against Sanchez was an unadjudicated misdemeanor. The court expressed concern that trying to impeach Sanchez would turn into a trial within a trial. FN3

> FN3 [Earlier, the trial court had explained that it saw a difference between a case where there was a conviction and one where there was not. Where there was no conviction, an attempt to impeach someone for alleged prior dishonest conduct was more likely to lead to a trial within a trial or a confusing mini-trial with a real chance of undue consumption of time.
>
> Later during the trial, defense counsel renewed his motion to impeach Sanchez with the alleged theft in 2002. The court denied the motion.]

Defense counsel argued that his question to Sanchez would be a single yes or no question concerning whether he stole something from a book store in 2002. The court relied on case law, especially the Supreme Court decision in People v. Chatman (2006) 38 Cal.4th 344, 373 (Chatman). The court explained to counsel that depending on Sanchez's answer to the question, the whole thing could devolve into a separate trial. The court denied appellant's motion.

(Id.).

## Discussion

**I.    Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a);[2] 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial district where the prisoner is held in custody. *See* 28 U.S.C. § 2241(d).

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Petitioner asserts that his conviction and sentence violate his rights under the United States Constitution.  Petitioner is currently incarcerated at Corcoran State prison, which is within the territorial jurisdiction of the United States District Court for the Eastern District of California.  28 U.S.C. § 84.  Accordingly, the Court has jurisdiction to entertain Petitioner's petition and venue is proper in the Eastern District.  28 U.S.C. § 2241(c)(3).

## II.  Standard of Review

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment." *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)).   Under section 2254, a petition for writ of habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).  Section 2254 requires federal habeas courts to give considerable deference to state court decisions, *Himes v. Thompson*, 336 F.3d 848, 852-53 (9th Cir. 2003), and the state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1). Federal habeas courts are bound by a state's interpretation of its own laws.  *Souch v. Schaivo,* 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002).

## III.  Petitioner's Claims

Petitioner contends his conviction is unconstitutional because the trial court prohibited him from impeaching an important prosecution witness in violation of Petitioner's Sixth Amendment right to confront witnesses and his Fourteenth Amendment right to due process.  Petitioner also contends that his sentence violates his Sixth Amendment right to a jury trial because the trial court enhanced Petitioner's sentence based on the fact of Petitioner's prior convictions without submitting the issue of Petitioner's prior convictions to a jury.

**A. The Impeachment Issue**

The California Supreme Court summarily denied Petitioner's claim. In reviewing a state court's summary denial of a state habeas petition, the Court must "look through" the summary disposition to the last reasoned decision issued by the state. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991). The last reasoned State court decision addressing Petitioner's confrontation clause claim is the California Court of Appeal's decision affirming Petitioner's conviction and sentence. (Lod. Doc. 3). The California Supreme Court is presumed to have rejected Petitioner's state habeas petition for the same reasons set forth in the reasoned decision of the Court of Appeal. *Id.* at 803.

The Court of Appeal held that Petitioner was not prejudiced by any trial court error in excluding the impeachment evidence because of the other evidence of Petitioner's guilt presented by the prosecution. (Lod. Doc. 3 at 16-17). For reasons discussed below, the Court cannot say that the California Court of Appeals decision was objectively unreasonable.

### 1. Confrontation Clause Claim

The Sixth Amendment's Confrontation Clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Hernandez v. Small*, 282 F.3d 1132, 1137 n.3 (9th Cir. 2002) (citation omitted). The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to be confronted with the witnesses against him. *E.g., Slovik v. Yates*, 545 F.3d 1181, 1185-86 (9th Cir. 2009) (citation omitted). "The Supreme Court has explained that the right of confrontation 'means more than being allowed to confront the witness physically,' but rather '[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Id.* "The right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 53-54 (1987). The right to confront witnesses is not absolute, however, and in exercising this right, the accused must comply with the state's established rules of procedure and evidence. *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 308 (1973).

Confrontation Clause errors are subject to harmless-error analysis. *E.g., Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009). "In reviewing state court decisions for harmless error in the context of a habeas petition, federal courts review to determine if the error had 'a substantial and injurious

effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). "In making this inquiry, the court must review the record to determine 'what effect the error had or reasonably may be taken to have had upon the jury's decision.'" *Id.* (citations omitted).

    The Court is convinced that any error in prohibiting Petitioner from impeaching Sanchez with evidence of his prior arrest for petty theft was harmless. The mere fact that Sanchez was arrested for petty theft (not convicted) would not reasonably have caused the jury to discredit his testimony; this is especially so because Sanchez' testimony was corroborated by prosecution witness Guardia, who testified to essentially the exact same facts as Sanchez. (Lod. Doc. 3 at 15). Gaurdia further testified that Petitioner told him he had committed the theft because he (Petitioner) "needed the money." (Id. at 5). Based on the evidence presented by the prosecution, it is highly likely that the jury would have convicted Petitioner even if Sanchez had not testified at all. Accordingly, the Court cannot say that the trial court's order prohibiting Petitioner from impeaching Sanchez with his prior arrest for petty theft had a substantial and injurious effect or influence in determining the jury's verdict. The Court agrees with the California Court of Appeal's determination that Petitioner was not harmed by the trial court's ruling and thus Petitioner is not entitled to relief on his Confrontation Clause Claim.

### 2. Due Process Claim

    Petitioner contends that the trial court erred in ruling that California Rule of Evidence 352 permitted the trial court to prohibit Petitioner from impeaching Sanchez, and that such error deprived Petitioner of his right to due process.

    The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. *Chambers*, 410 U.S. at 294. A defendant's right to present evidence in her defense is not unlimited, however. *Clark v. Arizona*, 548 U.S. 735, 770 (2006). State rules of evidence may curtail a defendant's right to introduce relevant evidence provided such rules serve a legitimate purpose and are not disproportionate to the ends they seek to promote. *Id.* In order to establish a due process violation based on a trial court's error of state law, a federal habeas petitioner must establish that the error "so infected the entire trial that the resulting conviction violates due process." *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

For reasons discussed in section III(A)(1) above, the Court cannot say that any error committed by the trial court so infected Petitioner's entire trial that the resulting conviction violated due process, as any error was harmless. Accordingly, Petitioner is not entitled to relief on his due process claim.

### B. Sentencing Error Claim

Petitioner contends that his sentence violates his rights under the Sixth Amendment to the United States Constitution because the sentencing court enhanced Petitioner's sentence based on facts not found true beyond a reasonable doubt by the jury. *See Cunningham v. California,* 549 U.S. 270 (2007) (holding that Sixth Amendment requires a jury to make findings of fact before such facts may be used to expose defendant to a sentence beyond statutory maximum); (Pet., Attachment A at 19-21). The sentencing court enhanced Petitioner's sentence based on the fact that Petitioner had suffered a prior "strike" conviction pursuant to California Penal Code 667(e). (Pet., Attachment A at 3). Petitioner's claim is devoid of merit. The rule espoused in *Cunningham* does not apply to the fact of a prior conviction. *E.g., Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). Further, Petitioner admitted the fact of his prior conviction. (Pet., Attachment A at 2). Petitioner was thus was not entitled to a jury finding on the issue. *Accord Blakely v. Washington*, 542 U.S. 296, 303 (2004) ("'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict *or admitted by the defendant"*)(emphasis added). Petitioner has no colorable sentencing error claim under the Sixth Amendment.[3] Accordingly, the California Court of Appeal's rejection of Petitioner's Sixth Amendment sentencing claim was not objectively unreasonable and thus Petitioner is not entitled to relief on this claim. *Lockyer*, 538 U.S. at 75.

///

///

---

[3] Petitioner implies that the sentencing court abused its discretion in failing to find that Petitioner's mitigating circumstances outweighed his prior strike for the purposes of imposing a sentencing enhancement. (*See* Pet., Attachment A at 25). Errors of state law do not warrant federal habeas relief except in limited circumstance which do not apply here. *See Holley v. Yarborough*, 568 F.3d 1091, 1102 (9th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (state law errors do not warrant relief unless errors so [infect] the entire proceeding that the resulting conviction and sentence violates due process).

**Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial

1  showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a
2  certificate of appealability.

### Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

4. The Clerk of Court is DIRECTED to enter judgment; and

5. The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

**Dated:     August 20, 2009**              **/s/ John M. Dixon**
                                   UNITED STATES MAGISTRATE JUDGE